UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| NICOLE MCMILLEN, SUSAN RYMER, and RUBY KENDRICK,<br><br>    Plaintiffs,<br><br>v.<br><br>CLARK COUNTY, *et al.*,<br><br>    Defendants. | Case No. 2:14-CV-00780-APG-PAL<br><br>**ORDER GRANTING IN PART MOTION FOR ATTORNEY'S FEES**<br><br>(ECF No. 148) |

Plaintiffs Nicole McMillen, Susan Rymer, and Ruby Kendrick move for attorney's fees and costs under 42 U.S.C. § 1988. They argue they are prevailing parties in this civil rights action, which, among other things, challenged the constitutionality of Nevada's Fair Share Program, Nevada Revised Statutes ("NRS") § 258.070(3) (as it existed prior to the 2015 amendments). They seek over $148,000 in attorney's fees and $1,233.80 in costs. Defendants Clark County, Las Vegas Metropolitan Police Department ("LVMPD"), and Sheriff Joe Lombardo oppose, arguing the plaintiffs are not prevailing parties and the requested fees are unreasonable. These defendants also argue they cannot be liable for attorney's fees based on the conduct of former Constable John Bonaventura and his deputy Bryan Cornell.

I deny the motion as to plaintiffs Rymer and Kendrick because these plaintiffs are not prevailing parties within § 1988's meaning. Rymer and Kendrick were joined after the preliminary injunction was dissolved and they obtained no other judicial relief in their favor. I grant the motion as to McMillen, who was a prevailing party to the extent she obtained a preliminary injunction. McMillen is entitled to a fee award against both Sheriff Lombardo in his official capacity and LVMPD as successors to the Constable's Office.

**I. BACKGROUND**

The initial complaint in this matter was filed by Nicole McMillen against the Las Vegas Township Constable's Office, Constable John Bonaventura, and Deputy Constable Bryan

Cornell based on their enforcement of the Fair Share Program, which requires residents to register their cars in Nevada and pay associated fees. ECF No. 1. The complaint alleged that in March 2014, Cornell entered the guard-gated parking garage at McMillen's residence looking for vehicles with out-of-state license plates. *Id.* at 3. Cornell observed such plates on McMillen's car and placed a yellow card on her car window. *Id.* at 4. The yellow card advised that "[a] complaint has been filed with the Las Vegas Township Constable's Office that could result in a criminal charge being filed against you. Please contact the deputy below to resolve this issue." *Id.*

McMillen contacted Deputy Cornell, and they agreed to meet in the lobby of an office building. *Id.* According to the complaint, when the parties met Cornell did not advise McMillen what criminal charge was at issue, did not advise her of her *Miranda* rights, and began questioning her regarding her possible violation of Nevada's Fair Share Program. *Id.* McMillen advised Cornell she was on the phone with her attorney. *Id.* Cornell then spoke with the attorney, who terminated the interview. *Id.* at 4-5. Cornell advised McMillen he intended to issue her a citation. *Id.* at 5.

McMillen subsequently received a letter stating she had been issued a citation but that it would not be forwarded to the Las Vegas Justice Court for 30 days. *Id.* The letter advised that to avoid having charges filed, McMillen was required to pay a $100 fee to the Las Vegas Township Constable's Office "in accordance with NRS 258.070.2." *Id.* The letter also stated that if she did not register her vehicle within 30 days, the citation would be forwarded to Justice Court for prosecution. *Id.* At the bottom of the letter, the following was written in bold capital letters: "PER NRS 258.070.2, YOU ARE RESPONSIBLE FOR THE $100 FEE REGARDLESS OF JUDICIAL ADJUDICATION." *Id.*

Based on these allegations, McMillen filed this lawsuit under 42 U.S.C. § 1983 alleging that the Constable's Office, Bonaventura, and Cornell violated her Fourth and Fifth Amendment rights by searching the parking garage and by interviewing her. *Id.* at 7. McMillen also alleged that the defendants' attempt to collect the $100 fee without any pre- or post-deprivation procedures violated her due process rights. *Id.* at 8-9. Additionally, McMillen alleged state law

claims for negligent supervision and training, malicious prosecution, and abuse of process based on the defendants' means of enforcing the Fair Share Program. *Id.* at 9-11. McMillen sought declaratory, injunctive, compensatory, and punitive relief. *Id.* at 11-13.

At a June 18, 2014 hearing, I preliminarily enjoined the defendants from collecting the $100 fee from McMillen. ECF No. 27. On July 8, I entered a written preliminary injunction order that prohibited the defendants "from collecting, attempting to collect, or taking any steps to enforce the $100 fee set forth in NRS § 258.070(3)." ECF No. 36 at 6. I also enjoined the Las Vegas Township Constable's Office "from instituting or continuing any criminal, civil, administrative, or other legal action against Ms. McMillen to collect or enforce that $100 fee." *Id.* I found that McMillen had "established a likelihood of success on her Section 1983 claim that NRS § 258.070(3) violates her right to procedural due process" because "neither the statute nor the state court system offers any opportunity to challenge the [$100 fee], either before or after it is levied," and the "fee must be paid even if the defendant is found not to have violated the Fair Share Program." *Id.* at 3-5.

McMillen then filed an amended complaint adding class allegations to pursue relief on behalf of any person from whom the defendants collected or attempted to collect the $100 fee. ECF No. 45. Additionally, while McMillen's original complaint challenged only the original defendants' means of enforcing the $100 fee, her amended complaint also challenged the constitutionality of § 258.070(3) on its face. *Id.* McMillen asserted the same causes of action and requests for relief but on a class-wide basis. *Id.*

McMillen then moved to certify the class. ECF No. 47. The defendants opposed class certification and moved to dismiss the complaint and to dissolve the preliminary injunction. ECF Nos. 56-58. I denied class certification, dissolved the injunction, and granted in part and denied in part the defendants' motion to dismiss. ECF No. 87. First, I held that McMillen's due process claim was moot because:

> McMillen no longer has a legally cognizable interest in the outcome of her due process claim. In her Opposition to Defendants' Motion to Dismiss and at the hearing, McMillen admitted Defendants have waived the $100 fee, her citation has been dismissed, and she registered her vehicle in Nevada. McMillen never paid the fee, and thus Defendants never deprived McMillen of a property interest

- 3 -

> without due process. Additionally, McMillen no longer faces threat of the fee, so her due process claim based on the threatened or attempted collection of the $100 fee and her related requests for declaratory and injunctive relief are moot.

*Id.* at 5. I also concluded no exceptions to mootness applied because (1) there was no basis to reasonably expect the defendants would attempt to re-impose the fee on McMillen's prior violation and (2) she had registered her vehicle so there was no basis to fear a future effort to impose a fee based on a new violation. *Id.* at 5. Additionally, the issue was not capable of repetition yet evading review because other individuals had paid the fee and could challenge the statute both facially and as enforced. *Id.* Because McMillen's due process claim was moot, I dismissed it along with her other claims that were based on a due process injury. *Id.* at 5-6.

I also denied class certification because McMillen's due process-based claims were moot and her other claims were not susceptible to class treatment. *Id.* at 10. Finally, I dissolved the preliminary injunction because it was based on McMillen's due process claim, which had become moot. *Id.* at 11.

McMillen then provided a notice of substitution under Federal Rule of Civil Procedure 25(d), asserting that LVMPD was the successor to the Constable's Office and that Sheriff Lombardo, in his official capacity, was the successor to Bonaventura in his official capacity. ECF No. 89. The notice of substitution was based on the fact that the Clark County Board of Commissioners abolished the Constable's Office and appointed the Sheriff as Ex Officio Constable effective January 4, 2015. *Id.*

McMillen appealed my order dissolving the preliminary injunction (ECF No. 93) and filed a second amended complaint (ECF No. 96). The second amended complaint added as named plaintiffs Rymer and Kendrick; it added as defendants Clark County, LVMPD as successor to the Constable's Office, and Sheriff Lombardo in his official capacity as Ex Officio Constable; and it removed the Constable's Office and Bonaventura in his official capacity. *Id.* at 1. Rymer and Kendrick were added as proposed class representatives for the due process-related claims because they actually paid the $100 fee. *Id.* at 10. McMillen remained a plaintiff for her claims relating to the search of the parking garage and her meeting with Cornell. *Id.* at 11-17.

Clark County, LVMPD, and Sheriff Lombardo moved to dismiss the second amended complaint, arguing, among other things, that it added two new plaintiffs even though my prior order did not specifically allow it and the plaintiffs did not move for leave to add them. ECF No. 122 at 6. The defendants also argued that there were no facts related to when these two new plaintiffs paid the $100 fee, and thus they could not determine if the statute of limitations had expired. *Id.* Each of the newly-added defendants further contended that it was not liable for the acts of the former Constable's Office, Bonaventura, or Cornell. *Id.* at 8-15.

Before I ruled on the motion to dismiss, the parties requested a stay, based in large part on the Nevada Legislature's recent amendment of the Fair Share statute, which likely mooted any constitutional claims for prospective relief. ECF No. 139 at 2. In light of these developments, the parties discussed settlement. *Id.* I granted the stay. ECF No. 142.

McMillen subsequently dismissed her appeal and the parties filed a stipulated motion for dismissal of this case. ECF Nos. 143, 146. The parties agreed that the plaintiffs' request for attorney's fees and costs would be resolved by separate motion and that this court would retain jurisdiction "solely to adjudicate Plaintiffs' asserted claim for attorney's fees and costs." ECF No. 146 at 2.

**II. ANALYSIS**

Under 42 U.S.C. § 1988(b), the court has discretion to award reasonable attorney's fees to the prevailing party in an action to enforce 42 U.S.C. § 1983. Thus, prevailing party status is a "threshold" inquiry for a motion to recover attorney's fees under § 1988. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). A party is a prevailing party "when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992). Relief on the merits occurs when the material alteration of the parties' legal relationship is accompanied by judicial *imprimatur* on the change. *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 605 (2001).

A party who obtains preliminary injunctive relief may be considered a prevailing party if (1) the "preliminary injunction ruling [is] sufficiently 'on the merits' to satisfy *Buckhannon*'s

'judicial imprimatur' requirement;" and (2) "the plaintiff [has] obtained relief sufficiently enduring to satisfy the 'material alteration of the parties' legal relationship' requirement." *Higher Taste, Inc. v. City of Tacoma*, 717 F.3d 712, 716 (9th Cir. 2013).

### A. "On the Merits"

A preliminary injunction will satisfy this requirement "if it is based on a finding that the plaintiff has shown a likelihood of success on the merits." *Id.*; *see also Watson v. Cty. of Riverside*, 300 F.3d 1092, 1096 (9th Cir. 2002) ("A preliminary injunction issued by a judge carries all the 'judicial imprimatur' necessary to satisfy *Buckhannon*."). However, "it is not enough merely to have been a 'catalyst' in causing a voluntary change in the defendant's conduct." *Watson*, 300 F.3d at 1096 (quoting *Buckhannon*, 532 U.S. at 600).

McMillen obtained relief on the merits because my preliminary injunction ruling was predicated on a finding that McMillen was likely to succeed on the merits of her due process claim based on the manner that the defendants allegedly enforced the Fair Share Program. *See* ECF Nos. 27; 36; 110 at 18. However, Rymer and Kendrick did not obtain any relief on the merits. They were not plaintiffs during the time the preliminary injunction was in effect. They do not argue any settlement they may have reached with the defendants entitles them to prevailing party status (nor does McMillen). To the extent Rymer and Kendrick argue they were the catalyst for LVMPD's voluntary decision to not enforce the Fair Share statute or for the Nevada Legislature's voluntary decision to amend the statute, merely being the catalyst to the defendants' or a third party's voluntary change is insufficient to confer prevailing party status under *Buckhannon*. Defendants Rymer and Kendrick therefore are not prevailing parties because they did not achieve any judicially-sanctioned relief on the merits. McMillen, however, did.

### B. "Sufficiently Enduring"

An injunction, by its very nature, typically will materially alter the parties' legal relationship while it remains in effect because the plaintiff, through the injunctive relief, "can force the defendant to do something he otherwise would not have to do." *Higher Taste*, 717 F.3d at 716 (quoting *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1118 (9th Cir. 2000)). However, because "the relief afforded by a preliminary injunction may be undone at the conclusion of the

case, some inquiry into events post-dating the injunction's issuance will generally be necessary" to determine if the injunctive relief was sufficiently enduring to qualify the plaintiff as a prevailing party. *Id.* at 717. "For example, a plaintiff who succeeds at the preliminary injunction stage but loses on the merits after the case is litigated to final judgment is not a prevailing party under § 1988." *Id.* (emphasis omitted); *see also Sole v. Wyner*, 551 U.S. 74, 83 (2007) (stating a party does not prevail based on a preliminary injunction "that is reversed, dissolved, or otherwise undone by the final decision in the same case" where the plaintiff later loses on the merits).

Under certain circumstances a preliminary injunction may result in a "sufficiently enduring change to warrant an award of fees, even in the absence of a final judgment on the merits." *Higher Taste*, 717 F.3d at 717. For example, "when a plaintiff wins a preliminary injunction and the case is rendered moot before final judgment, either by the passage of time or other circumstances beyond the parties' control, the plaintiff is a prevailing party eligible for a fee award." *Id.*

Thus, where "the plaintiff never secured a final judgment granting permanent injunctive relief, [but] the preliminary injunction ended up affording all the relief that proved necessary," then the plaintiff may still be considered a prevailing party. *Id.* The plaintiff will have "received relief that was as enduring as a permanent injunction would have been and, by virtue of the case's mootness, that relief was no longer subject to being reversed, dissolved, or otherwise undone by the final decision in the same case." *Id.* (quotation omitted). For example, in *Watson*, the plaintiff obtained a preliminary injunction precluding the use of a particular report at an administrative hearing. 300 F.3d at 1094. The administrative hearing took place while the injunction was still in effect. *Id.* Thus, the injunction became moot. *Id.* The plaintiff was a prevailing party because he had obtained all the enduring relief he sought: to prevent use of the report during the administrative hearing. *Id.* at 1095-96.

A preliminary injunction also may suffice to confer prevailing party status where the defendant subsequently moots the case. *Higher Taste*, 717 F.3d at 717. Under this scenario, there is "no concern that the relief the plaintiff won at the preliminary-injunction stage will prove to be ephemeral. The defendant's action in rendering the case moot ensures that the injunction's

alteration of the parties' legal relationship will not be undone by subsequent rulings in the litigation." *Id.*

In the present case, the preliminary injunction materially altered the legal relationship between McMillen and defendants Bonaventura, Cornell, and the Constable's Office because it precluded those defendants from collecting the $100 fee from McMillen. Although the defendants waived the fee after I orally enjoined them (*see* ECF No. 58-2 at 19), McMillen achieved a material alteration in the parties' legal relationship with respect to the initial fee the defendants sought to collect. Prior to my ruling the defendants had no intention of waiving the fee. Indeed, the defendants opposed the preliminary injunction motion on the merits, not on the basis that they had waived the fee. It was only after I orally enjoined the defendants from collecting the fee that they waived it. Thus, the preliminary injunction precluded the defendants from doing something they otherwise would have done: attempt to collect the $100 fee from McMillen. That was precisely the relief McMillen sought in her original complaint. *See* ECF No. 1 at 12 (seeking injunctive relief to prevent the defendants "from collecting or taking any action in furtherance of collection on any amounts allegedly due and owing" in relation to the $100 fee).

I later dissolved that injunction, but not because McMillen failed to prevail on the substantive merits of that dispute. Rather, the parties' conduct mooted McMillen's due process claim. I orally enjoined the defendants from seeking to collect the fee from McMillen on June 18, 2014. ECF No. 27. On July 1, the defendants voluntarily waived the fee. ECF No. 58-2 at 19. By that time, McMillen had registered her vehicle. *See* ECF Nos. 56 at 12; 58-2 at 21; 109 at 21. McMillen's registration of her vehicle and the defendants' fee waiver rendered McMillen's due process claim moot and led me to dissolve the preliminary injunction.

Although brief, McMillen's victory suffices for a fee award. I entered a judicially enforceable order granting McMillen the relief she sought on a significant issue in the litigation, thereby materially altering the legal relationship between the parties. My preliminary injunction order was based on a finding that McMillen was likely to succeed on the merits. The defendants opposed that preliminary injunctive relief on the merits and then chose not to appeal my order.

Instead, they partially mooted McMillen's due process claim by waiving the fee. McMillen mooted the rest of her due process claim by registering her vehicle. The injunctive relief thus secured for McMillen the enduring relief she sought in her initial complaint: to avoid paying the fee. Because McMillen's due process claim became moot, the alteration of the parties' legal relationship achieved through my preliminary injunction order will not be undone by subsequent rulings in this litigation.

Because McMillen "obtained a preliminary injunction that result[ed] in a direct and substantial benefit" to her she is a prevailing party. *UFO Chuting of Hawaii, Inc. v. Smith*, 508 F.3d 1189, 1197 (9th Cir. 2007).

### C. Attorney's Fees

I next must determine a reasonable attorneys' fee to award. *Harris v. McCarthy*, 790 F.2d 753, 757-58 (9th Cir. 1986). The customary method of determining fees is known as the lodestar method. *McGrath v. Cnty. of Nev.*, 67 F.3d 248, 252 (9th Cir. 1995). I calculate the lodestar "by multiplying the number of hours . . . the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Id.* The lodestar is a presumptively reasonable fee award. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013).

I then assesses whether it is necessary to adjust the lodestar figure "upward or downward based on a variety of factors." *Id.* (quotation omitted). Those factors are:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill necessary to perform the legal services properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relations with the client, and (12) awards in similar cases.

*Harris*, 790 F.2d at 757-58 (quoting *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)). I am also guided by the factors set forth in Local Rule 54-14, which requires a motion for attorney's fees to include:

> (1) A reasonable itemization and description of the work performed;
> (2) An itemization of all costs sought to be charged as part of the fee award and not otherwise taxable under LR 54-1 through 54-13;

(3) A brief summary of:
    (A) The results obtained and the amount involved;
    (B) The time and labor required;
    (C) The novelty and difficulty of the questions involved;
    (D) The skill requisite to perform the legal service properly;
    (E) The preclusion of other employment by the attorney due to acceptance of the case;
    (F) The customary fee;
    (G) Whether the fee is fixed or contingent;
    (H) The time limitations imposed by the client or the circumstances;
    (I) The experience, reputation, and ability of the attorney(s);
    (J) The undesirability of the case, if any;
    (K) The nature and length of the professional relationship with the client;
    (L) Awards in similar cases; and
    (M) Any other information the court may request.

*1. Reasonable Number of Hours Expended*

"The number of hours to be compensated is calculated by considering whether, in light of the circumstances, the time could reasonably have been billed to a private client." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). The burden of identifying hours unnecessarily expended generally lies with opposing counsel, not the court. "If opposing counsel cannot come up with specific reasons for reducing the fee request that the district court finds persuasive, it should normally grant the award in full," or with a reduction of no greater than ten percent. *Id.* at 1112, 1116.

The defendants object to the hours expended because the billing records lump services together, six different attorneys worked on the case which led to unnecessary strategy meetings and conferences, and plaintiffs' counsel charged attorney rates for clerical services. The defendants also note that the only victory McMillen obtained was a short-lived preliminary injunction on her due process claim.

McMillen responds that the defendants dispute only six billing entries. She also argues that lumping services together is appropriate so long as those tasks are reasonably described. She further contends that the number of attorneys on the case is irrelevant if all work performed was reasonable. Finally, she argues the conferences and strategy meetings were not unnecessary duplicative work.

The number of hours reasonably expended in this litigation is affected by the fact that (1) only McMillen prevailed, (2) only for a brief time, and (3) only on her due process claim. The plaintiffs nevertheless seek fees for all plaintiffs, throughout the entire litigation, for all claims pursued.

No fees were reasonably incurred on McMillen's due process claim once I dismissed it as moot on January 29, 2015, except for fees incurred in preparing the fee application. I therefore deny any fees requested after January 29, 2015 except for the fees incurred in preparing the fee application.

As to the lumping of services, the defendants identify only a single instance in the billing records. However, there are other instances where tasks are lumped together, including attorney and clerical tasks billed in a single entry, thus making it difficult to determine if the time expended was reasonable. The mere fact that many attorneys worked on the case does not, in itself, warrant a fee adjustment. However, the billing records reflect some charges that are excessive, particularly in light of the fact that attorneys Jeffrey Barr and Melanie Hill justify a higher billing rate based on their expertise. Additionally, there are charges at the highest attorney rate for clerical work, such as filing documents. Many billing entries are for emails where the information is redacted, making it difficult to determine whether the time spent was reasonable, whether it was properly billed as attorney as opposed to clerical time, and whether it is the sort of correspondence that would normally be charged to a paying client.

However, the defendants did not identify particular hours that should be reduced beyond one or two examples, and I decline to do so for them. Consequently, I will apply only a ten percent "haircut" to the fees for the various deficiencies identified above.

### 2. Reasonable Rate

Generally, the reasonable rate is the "prevailing market rates in the relevant community." *Gonzalez*, 729 F.3d at 1205 (quotation omitted). McMillen has presented affidavits from various attorneys attesting to the reasonableness of the claimed rates. The defendants do not question the reasonableness of the range of rates, but instead dispute whether attorneys Barr and Hill are entitled to the top end of that range. The defendants have presented no evidence that the

requested rates are unwarranted. The reasonable rates therefore are: $450 per hour for Barr and Alicia Ashcraft, $400 per hour for Hill, $325 per hour for Lee Iglody and Ken Hogan, and $300 per hour for Jeffrey Hulet.

### 3. Other Factors

McMillen does not request an upward adjustment. However, in justifying the lodestar, she argues counsel obtained exceptional results by (1) forcing the Constable's Office to alter its practices and (2) for being the catalyst for LVMPD to refuse to enforce the program and for the Legislature to amend the statute.

The defendants, on the other hand, argue that the only success McMillen achieved was a short-lived injunction. They dispute that McMillen may use the catalyst theory to show she succeeded in forcing LVMPD's or the Legislature's actions. They also argue McMillen's success was limited because class action status was denied and she obtained no declaratory relief or damages.

"[T]he extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees' under § 1988." *Webb v. Sloan*, 330 F.3d 1158, 1168 (9th Cir. 2003) (quoting *Hensley*, 461 U.S. at 440). I engage in a two-step process to determine the appropriate reduction, if any, for limited success. *Id.* First, I consider "whether the plaintiff fail[ed] to prevail on claims that were unrelated to the claims on which he succeeded." *Id.* (quotation omitted). "Hours expended on unrelated, unsuccessful claims should not be included in an award of fees." *Id.* (quotation omitted). Second, I consider "whether the plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." *Id.* (quotation omitted).

#### a. Related Claims

"Claims are unrelated if they are entirely distinct and separate from the claims on which the plaintiff prevailed." *Id.* (quotation omitted). Related claims "involve a common core of facts or are based on related legal theories." *Id.* (emphasis omitted). Claims need not have both common facts and common law to find the unsuccessful and successful claims related. *Id.* Rather, "the focus is to be on whether the unsuccessful and successful claims arose out of the

same course of conduct." *Id.* at 1169 (quotation omitted). Further, "work on different aspects of a case often overlaps, and . . . "[m]uch of counsel's time will be devoted generally to the litigation as a whole." *Id.* (quotation omitted); *see also Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 903 (9th Cir. 1995) (stating to determine whether claims are related, the court asks "whether the [unsuccessful claim] arises from the same core of facts as the [successful claim] and [whether] it is likely that some of the work performed in connection with the [unsuccessful claim] also aided the work done on the merits of the [successful claim]" (quotation omitted)).

McMillen's due process claim is factually related to her unsuccessful claims. All claims arose out of the original defendants' means of enforcing the Fair Share Program. Given that all of her claims arose out of Cornell searching the garage, placing the yellow card on her car, and attempting to obtain the $100 fee from her, it is likely that some of the work performed in connection with the unsuccessful claims also aided work done on the successful due process claim.

### b. Level of Success

At this step, I "focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Webb*, 330 F.3d at 1168 (quotation omitted). "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Id.* (quotation omitted). Further, a plaintiff "may obtain excellent results without receiving all the relief requested." *Id.* (quotation omitted). When a defendant objects to a fee award based on limited success, I must consider "the relationship between the amount of the fee awarded and the results obtained." *Benton v. Oregon Student Assistance Comm'n*, 421 F.3d 901, 904 (9th Cir. 2005) (quotation omitted).

Contrary to the defendants' argument, the catalyst theory does not bar consideration of the impact McMillen's lawsuit had on enforcement and amendment of the statute. A plaintiff cannot use a catalyst theory to establish herself as a prevailing party under *Buckhannon*. But once the plaintiff is deemed a prevailing party, I must consider the results obtained when determining a reasonable fee award. *Id.* at 907. In determining the level of success, the amount

of damages recovered "is not the sole indicator" of the level of success, particularly in civil rights cases which may serve a public purpose. *Morales v. City of San Rafael*, 96 F.3d 359, 364-65 (9th Cir. 1996).

McMillen did not prevail on her other constitutional claims. She did not show an unconstitutional search, a Fifth Amendment violation, or a policy or practice of committing these violations about which she complained. She did not prevail on any of her state law claims. She also did not obtain any monetary relief.

But McMillen nevertheless achieved considerable success. She not only precluded the original defendants from collecting the fee from her, she effectively ended the original defendants' practice of charging the $100 without offering any means of challenging that fee. Shortly after I granted the preliminary injunction, the Constable's Office waived the fee not only for McMillen, but for others similarly situated. *See* ECF No. 148-1 at 9. Her lawsuit also inspired the Nevada Legislature to amend the Fair Share statute. *See id.* at 11-32. Although the defendants contend that only $100 was at stake, there was more at issue than monetary relief. McMillen vindicated a constitutional right, and not only for herself. She obtained a public benefit by putting an end to the original defendants' practices. Consequently, I will not reduce the lodestar amount for limited success.

With regard to the other *Kerr* factors, McMillen's counsel took this case on a contingency fee, given the low dollar amount represented by the $100 Constable's fee. The small amount of the Constable's fee likely also made the case undesirable for many lawyers to undertake. This is counsel's only case with McMillen. Given the small size of counsel's firm, they were precluded from taking on some other cases while handling this one. While the issues presented in this case were not overly complex, they involved a constitutional challenge to a state statute that required some level of sophistication.

Based on the *Kerr* factors, I award McMillen her attorney's fees for work performed before January 29, 2015 and for preparing the fee application, minus a 10% haircut. Those fees total $87,876.00.

////

**D. Costs**

The plaintiffs request $1,233.80 in costs. No one objects to the requested costs. Those costs appear reasonable. I therefore grant costs in that amount.

**E. Who Pays**

McMillen did not make clear in her motion against whom she is seeking fees. Defendants Clark County, LVMPD, and Sheriff Lombardo argue that no fees can be imposed against them because they played no role in the alleged violations, they were not parties in the case during the time the preliminary injunction was in effect, and they are not successors to the liabilities of the Constable's Office. McMillen responds that Clark County, LVMPD, and Sheriff Lombardo were automatically added as parties through their status as successors to the Constable's Office. McMillen also argues the County should not be able to legislate away liability by dissolving the Constable's Office and moving those responsibilities to LVMPD.

*1. Clark County*

Clark County was added as a defendant based on my prior order directing McMillen to do so. *See* ECF No. 87 at 6-7. As I indicated, Clark County was required to be named, even if it later would be dismissed. *Id.* But there is no basis to award fees against Clark County. There is no allegation that it was responsible for the alleged constitutional violation. It was not a defendant during the limited time McMillen obtained a preliminary injunction. Clark County is not a successor entity to either the Constable's Office or Constable Bonaventura in his official capacity. Consequently, fees and costs will not be awarded against Clark County.

*2. Sheriff Lombardo in his official capacity and LVMPD*

Sheriff Lombardo and LVMPD likewise are not alleged to have engaged in any wrongdoing and they were not parties during the brief time the injunction was in place. Thus, the only basis to award fees against them is if they are the successors to the Constable's Office and Constable Bonaventura in his official capacity.

Under Nevada law, constables generally are elected. NRS § 258.010(1)(a). The board of county commissioners may abolish the constable's office and "appoint the sheriff ex officio constable to serve without additional compensation." *Id.* § 258.010(3).

- 15 -

In March 2013, the Clark County Board of County Commissioners adopted an ordinance abolishing the Constable's Office for the Las Vegas Township, to become effective January 4, 2015. ECF No. 96-1 at 2. The Board also appointed the sheriff ex officio constable. *Id.* The County and Sheriff Lombardo entered into a memorandum of understanding pursuant to which Sheriff Lombardo, as Ex Officio Constable, would undertake the constable duties through a bureau in LVMPD. *Id.* at 5; *see also* NRS § 280.280(1) (stating that "every power and duty conferred or imposed by law upon a county sheriff which relates to law enforcement, and upon a chief of police or police department of any participating city, devolves automatically upon the [metropolitan police] department").

Under Federal Rule of Civil Procedure 25(d), "[a]n action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party." As the successors in interest to the Constable's Office and Constable Bonaventura in his official capacity, LVMPD and Sheriff Lombardo in his official capacity were properly and automatically substituted into the case and are responsible for the payment of attorney's fees and costs.[1] *See Hoptowit v. Spellman*, 753 F.2d 779, 781 (9th Cir. 1985) (stating new Department of Corrections was properly substituted under Rule 25 as successor to the Secretary of the Department of Social and Health Services, which was the agency previously responsible for the operation of the penitentiary); *Porter v. Am. Distilling Co.*, 71 F. Supp. 483, 489 (S.D.N.Y. 1947) ("In order for the provisions of § 780 or of Rule 25(d) to apply, it is not necessary that one individual succeed another in the same office; they are equally applicable where the duties of one are transferred to another."). However, Sheriff Lombardo is not responsible for any fees or costs in his personal capacity.

/ / / /

/ / / /

---

[1] Because the case has concluded and there is no remaining issue about prospective injunctive or declaratory relief, I need not analyze whether the case has become moot because Sheriff Lombardo does not intend to follow his predecessor's policies. *See Spomer v. Littleton*, 414 U.S. 514 (1974); *Mayor of Philadelphia v. Educational Equality League*, 415 U.S. 605 (1974).

## III. CONCLUSION

IT IS THEREFORE ORDERED that the plaintiffs' motion for attorney's fees **(ECF No. 148) is GRANTED in part and DENIED in part** as detailed above.

IT IS FURTHER ORDERED that the clerk of court shall enter judgment in favor of plaintiff Nicole McMillen and against defendants Sheriff Joe Lombardo in his official capacity as Ex Officio Constable and Las Vegas Metropolitan Police Department for attorney's fees in the amount of $87,876.00 and costs in the amount of $1,233.80.

DATED this 23rd day of September, 2016.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE